IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,         )
                                  )
    vs.                           ) Criminal No. 06-83
                                  )
FREDERICK DATES, II               )

MEMORANDUM ORDER

Gary L. Lancaster,
District Judge.                                October 30, 2007

Defendant, Frederick Dates, II, moves to suppress evidence that was seized from his person and his vehicle following a traffic stop by the Washington Police Department on February 11, 2005. Defendant has standing to present this motion. The principle issue presented by the motion is whether the police had reasonable suspicion to stop defendant for a traffic violation. Defendant further argues that the police improperly conducted an inventory search of his vehicle.

The government opposes the motion contending that the traffic stop was lawful because the police reasonably believed a traffic violation had taken place. Further, the government contends that the inventory search of the vehicle was permissible because it was incident to defendant's lawful arrest, it falls within the "automobile exception" to the warrant requirement, and it was pursuant to established policy of the Washington Police Department.

The court has considered the evidence introduced at the

suppression hearing held on October 25, 2007. For the following reasons, defendant's motion to suppress is denied.

I. FINDINGS OF FACT

The credible evidence introduced at the hearing establishes the following:

At approximately 2:30 a.m. on February 11, 2005, Officer Jason Stenger of the Washington Police Department was on routine patrol. He observed a 1995 green Chevrolet Tahoe being operated without a registration sticker on the license plate.[1] Officer Stenger radioed the 911 dispatch and control center, requesting that the license plate number be checked through the Pennsylvania Department of Transportation database. The license plate number came back as "No Record Found." Upon receiving this information, Officer Stenger initiated a traffic stop.

The driver of the vehicle, later identified as defendant, pulled into a gas station and stopped near one of the gas pumps. There were no other occupants in the vehicle. Officer Stenger explained to defendant that he was pulled over because there was no registration sticker on the license plate and because his license plate number came back as "No Record Found" when checked in the database. While explaining the reasons for the traffic stop to

---

[1] Driving an unregistered vehicle is prohibited in Pennsylvania pursuant to 75 Pa.Cons.Stat. § 1301(a).

defendant, Sergeant Robert Lemons arrived at the scene.[2] Defendant explained to Officer Stenger that he had recently purchased the vehicle and provided a temporary registration document, or "pink slip."

While Officer Stenger examined the "pink slip," Sergeant Lemons stood on the passenger side of the vehicle and observed, in plain view, a set of brass knuckles on the floor in the area between the driver's side and the passenger's side of the vehicle.[3] Sergeant Lemons notified Officer Stenger of the brass knuckles. Officer Stenger ordered defendant out of the vehicle and placed him under arrest for possessing the brass knuckles.

At some point, Officer Stenger discovered the temporary registration document in the upper portion of the rear window on the driver's side.[4] Officer Stenger testified that the temporary registration document was difficult to see because the rear window was tinted and because the vehicle was covered with soot, grime,

---

[2] Officer Stenger did not request back-up. Sergeant Lemons heard the call from dispatch over the radio that no record of the vehicle was found and also heard that Officer Stenger was stopping the vehicle. Sergeant Lemons was on patrol nearby and it is common practice for other officers to assist at traffic stops, particularly during the midnight shift.

[3] In Pennsylvania, the possession of brass knuckles is prohibited pursuant to 18 Pa.Cons.Stat. § 908(c).

[4] 75 Pa.Cons.Stat. § 1310.1(c) provides that a temporary registration permit "shall be affixed to the extreme lower left-hand (driver side) inside corner of the rear window of a vehicle with the printed information visible from the outside."

and salt from the winter road conditions.

After placing defendant under arrest for possessing the brass knuckles, Officer Stenger searched defendant and discovered a baggy of marijuana and a baggy of crack cocaine in defendant's pants' pockets. While retrieving the brass knuckles from the vehicle, Officer Stenger observed, in plain view, additional quantities of marijuana and crack cocaine in the console area of the vehicle. Officer Stenger called for a tow truck. Pursuant to the Washington Police Department's official policy that vehicles be inventoried immediately upon receipt into police custody, Officer Stenger conducted an inventory search of the vehicle. During the inventory search, Officer Stenger discovered a backpack on the floor in the rear passenger compartment of the vehicle which smelled of marijuana. Inside the backpack, he located approximately 160 grams of crack cocaine and 344 grams of marijuana.

## II. STATEMENT OF REASONS

The Fourth Amendment to the United States Constitution prohibits the government from conducting "unreasonable searches and seizures" of individuals. U.S. Const. amend. IV. Except under limited circumstances, warrantless searches and seizures are per se unreasonable. U.S. v. Ross, 456 U.S. 798, 824-825 (1982). The exclusionary rule prohibits the introduction into evidence of

materials and testimony that are the products or indirect results of an illegal search, the so-called "fruit of the poisonous tree" doctrine. <u>Wong Sun v. United States</u>, 371 U.S. 471, 484-485 (1963).

Here, the police obtained evidence, brass knuckles and illegal drugs, without a warrant pursuant to a traffic stop. According to defendant, the officer lacked reasonable suspicion to stop defendant's vehicle for a traffic violation and all evidence obtained pursuant to the unlawful traffic stop should be suppressed. Defendant also argues that the officer conducted an improper inventory search and the evidence located in the backpack should be suppressed. The government contends that the officer had reasonable suspicion to believe a traffic violation had occurred and the evidence seized thereafter did not violate defendant's Fourth Amendment's rights.

Because we find that the officer had reasonable suspicion to initiate the traffic stop and that the inventory search was proper, we deny defendant's motion to suppress.

It is undisputed that stopping and detaining a vehicle and its occupants constitutes a seizure under the Fourth Amendment. <u>U.S. v. Johnson</u>, 63 F.3d 242, 245 (3d Cir. 1995). Here, the parties dispute whether there was reasonable suspicion to conduct the February 11, 2005 traffic stop.

In <u>Terry v. Ohio</u>, 392 U.S. 1 (1968), the Supreme Court held that, under certain circumstances, a police officer need not

have probable cause to detain a suspect. Rather, when an officer is only making a brief, investigatory stop, he may do so whenever he has a reasonable, articulable suspicion that criminal activity is afoot. Id. at 30. "Reasonable, articulable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, and only a minimal level of objective justification is necessary for a Terry stop." U.S. v. Delfin-Colina, 464 F.3d 392, 396 (3d Cir. 2006)(internal quotation marks and citations omitted).

The Terry reasonable, articulable suspicion standard applies to routine traffic stops. Id. at 397. A traffic stop will be deemed reasonable "when an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop." Id. at 398. For example, a stop to check a driver's license and registration is constitutional when it is based on an "articulable and reasonable suspicion that ... an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law." Delaware v. Prouse, 440 U.S. 648, 663 (1979).

This standard is not particularly rigorous because the proper inquiry is not whether a traffic violation actually occurred, but rather whether there are facts present that would lead a reasonable officer to believe that a violation may have

occurred. Delfin-Colina, 464 F.3d at 398 ("an officer need not be factually accurate in her belief that a traffic law had been violated but, instead, need only produce facts establishing that she reasonably believed that a violation had taken place.") See, also, U.S. v. Fleetwood, 235 Fed.Appx. 892, 895 (3d Cir. 2007). Therefore, a reasonable mistake of fact does not violate the Fourth Amendment. Delfin-Colina, 464 F.3d at 398.

Here, defendant contends that the existence of the temporary registration document in the rear window, despite being obscured, renders the traffic stop unlawful. However, Officer Stenger's reasonable mistake of fact does not violate the Fourth Amendment. Officer Stenger presented specific, articulable facts that, at the time of the stop, he believed defendant's vehicle was unregistered in violation of 75 Pa. Cons.Stat. § 1301(a). At the suppression hearing, he testified that no registration sticker appeared on the license plate and no record of the vehicle was found in the database. Additionally, at the time of the stop, he could not see any temporary registration document because the rear window was tinted and because of the soot, grime, and salt covering the window. Thus, Officer Stenger had a reasonable belief that the vehicle was not properly registered in violation of Pennsylvania law. An objective review of the facts reveals that the absence of a registration sticker and no record of the vehicle in the database presented Officer Stenger with reasonable suspicion, despite any

7

mistake of fact. In light of the minimal level of objective justification for a <u>Terry</u> stop, the court finds that the government submitted sufficient evidence at the suppression hearing to establish reasonable suspicion.

After the lawful traffic stop, the brass knuckles were properly seen and seized under the plain-view doctrine. <u>U.S. v. Hensley</u>, 469 U.S. 221, 235 (1985) (holding that police are entitled to seize evidence revealed in plain view in the course of a lawful <u>Terry</u> stop). Defendant was then lawfully arrested for possessing brass knuckles. Upon arrest, Officer Stenger searched defendant's person and discovered one baggy of marijuana and one baggy of crack cocaine in defendant's pants' pockets. This search of defendant's person was lawful incident to arrest. See <u>U.S. v. Robinson</u>, 414 U.S. 218, 224 (1973).

Once a lawful arrest occurs, an officer may, as a contemporaneous incident of that arrest, search the passenger compartment of a vehicle, as well as any containers therein. <u>New York v. Belton</u>, 453 U.S. 454, 460 (1981). Officer Stenger discovered additional quantities of illegal drugs in plain view in the console area of the vehicle after arresting defendant for possession of the brass knuckles. The additional drugs in the console area of the vehicle were lawfully seized under the plain-view doctrine and as a contemporaneous incident of the arrest. Thus, the brass knuckles, the illegal drugs on defendant's person,

and the illegal drugs in the vehicle console were all lawfully seized.

Defendant next argues that the backpack containing additional quantities of illegal drugs was unlawfully seized pursuant to an improper inventory search. The government asserts that the following reasons justify the inventory search: (1) the search of the vehicle was incident to defendant's lawful arrest; (2) the search falls within the "automobile exception"; and (3) the search was pursuant to established police policy. As discussed below, each of these reasons justifies the seizure of the backpack.

First, as stated above, the police may lawfully search the passenger compartment of a vehicle, and any containers therein, as a contemporaneous incident of a lawful arrest. See New York v. Belton, 453 U.S. at 469. Here, Officer Stenger lawfully discovered the backpack in the rear area of the passenger compartment after arresting defendant for possession of the brass knuckles. Thus, the search and seizure of the backpack was not unlawful as a contemporaneous incident of defendant's lawful arrest.

Second, pursuant to the "automobile exception" to the warrant requirement, the police may search the vehicle and its contents once they have probable cause to believe there is contraband inside. Wyoming v. Houghton, 526 U.S. 295, 302 (1999); U.S. v. Burton, 288 F.3d 91, 100 (3d Cir. 2002). Once contraband was discovered on defendant's person and in plain view in the

console of the vehicle, Officer Stenger had probable cause to search the passenger compartment of the vehicle, as well as any containers therein. Thus, the backpack was lawfully seized pursuant to the "automobile exception" to the warrant requirement.

Finally, the inventory search exception to the warrant requirement permits the contents of vehicles to be inventoried without a warrant, probable cause, or reasonable suspicion. South Dakota v. Opperman, 428 U.S. 364, 372 (1976). Inventory searches conducted pursuant to established and standardized police policy are not discretionary or arbitrary searches. U.S. v. Frank, 864 F.2d 992, 1003 (3d Cir. 1988)(search of rental vehicle in which defendant was arrested, including search of zippered garment bag therein was proper inventory search).

Defendant also argues that towing the vehicle and conducting an inventory search were improper because defendant had permission to park in the gas station parking lot where defendant was stopped. This gas station parking lot was directly across the street from defendant's residence. The government contends that towing the vehicle was proper pursuant to the "community caretaking function" of the police as well as its established policy.

Here, defendant's argument fails because the government presented sufficient evidence that the towing and inventory of the vehicle was pursuant to established standard department policy. The government submitted the Washington Police Department's written

policy which provides that "[A]ll vehicles towed by the authority and direction of this police department will be examined and inventoried immediately upon acceptance into police control or custody." The inventory search was proper pursuant to this established written policy.

Accordingly, because the traffic stop was supported by reasonable suspicion, the evidence seized was not the "fruit of the poisonous tree." There is no basis on which to suppress any evidence.

III. CONCLUSION

The government has sustained its burden of proof in this instance. The credible evidence establishes that defendant's Fourth Amendment rights were not violated on February 11, 2005. Defendant's motion to suppress [Doc. No. 37] is DENIED.

BY THE COURT:

/s/ Lancaster

cc: All Counsel of Record